UNITED STATES ex rel. ALEXANDROFF v. MOTHERWELL, Keeper of the Philadelphia County Prison, et al.

(District Court, E. D. Pennsylvania. July 12, 1900.)

1. TREATIES—CONSULAR POWERS—DESERTER FROM NAVY OF FOREIGN NATION.
   A seaman who has deserted from the Russian navy while under assignment to a vessel in course of construction in this country, but which has not as yet been acquired by the Russian government, and whose crew has not yet been organized, is not a deserter from a ship of war, within article 9 of the treaty of December, 1832, between the United States and the empire of Russia, providing that consuls and vice consuls may require the assistance of the local authorities for the arrest and detention of deserters from the ships of war and merchant vessels of their country.

2. SAME—EVIDENCE.
   Under article 9 of the treaty of December, 1832, between the United States and the empire of Russia, providing for the arrest and imprison-

ment of deserters from the ships of war of their country upon application of consuls and vice consuls, in writing, to the competent tribunals, and proof, by the exhibition of the registers of vessels, the rolls of the crews, or other official documents, that such individuals formed part of the crews, one who has been imprisoned as an alleged deserter from the Russian navy on application of a Russian vice consul will be released on habeas corpus, where no register or roll of the crew, or other official document substantiating the vice consul's averment, is produced.

Bernard Harris and Isaac Hassler, for relator.
Francis C. Adler and John F. Lewis, for respondents.

McPHERSON, District Judge. The relator, who is conceded to be a deserter from the Russian naval service, is confined in the jail of this county by virtue of a commitment issued by a United States commissioner under section 5280 of the Revised Statutes. This section provides the legal machinery for the arrest of deserting seamen, and for the delivery of such offenders to the consul or vice consul of "any foreign government having a treaty with the United States, stipulating for the restoration of seamen deserting." The proceedings before the commissioner were formally regular, and the testimony taken upon the hearing of this writ of habeas corpus discloses no dispute of fact. The single question for decision is whether article 9 of the treaty with Russia, concluded in December, 1832, under which the arrest was made, justifies the prisoner's detention.

The facts are these: The prisoner is a conscript member of the Russian navy, whose term of service has not expired; his duty being to care for the sick, as an assistant physician. In the fall of last year he was ordered, and thereupon proceeded, to Philadelphia, as one of a squad of seamen who were intended to become part of the crew of the Variag, a cruiser then and now in course of construction at the shipyard of Cramp & Sons, in this city. The vessel is being built under a contract with the Russian government, and is nearing completion, but she has not yet been accepted by the Russian authorities. The prisoner has never been on board of her, and there is no proof that her crew has ever been organized. Not long ago, the prisoner deserted the service, and took up his residence in the city of New York, where he was arrested upon the written request of the Russian vice consul in Philadelphia. Article 9 of the treaty is as follows:

"The said consuls, vice-consuls and commercial agents are authorized to require the assistance of the local authorities for the search, arrest, detention. and imprisonment of the deserters from the ships of war and merchant vessels of their country. For this purpose they shall apply to the competent tribunals, judges, and officers and shall in writing demand such deserters, proving by the exhibition of the registers of vessels, the rolls of the crews, or by other official documents, that such individuals formed part of the crews; and this reclamation being thus substantiated, the surrender shall not be refused."

Upon these facts, I do not think that discussion is needed. It seems to me to be clear that the prisoner does not fall within the treaty. For this decision there are three reasons. First. The Variag is not yet a Russian ship of war. She is an unfinished vessel, intended, no doubt, to become a Russian cruiser; but she has not yet acquired, and she may never acquire, that character. Second. The

prisoner is not yet a member of her crew. So far as disclosed by the evidence, the vessel has no such organization, in the sense intended by the treaty. The prisoner and certain associates were ordered to Philadelphia, to serve as part of the cruiser's complement; but they have not yet begun that service, and may never be called upon to perform it. Third. Even if it be assumed that the prisoner may be treated in this proceeding as a member of a crew, because the Russian government intended that he should hereafter take upon him such status, the kind of proof required by the treaty to prove his status has not been offered. No register or roll of the crew, or other official document substantiating the vice consul's averment, has been produced, and therefore the evidence specifically described and made necessary by the treaty itself has not been produced. It follows that no legal justification for the prisoner's detention has been shown, and that he must be released from custody.

It is proper to add that, while this conclusion seems to me to be unavoidable, I have reached it with some reluctance. The prisoner is a deserter from the naval service of his country, and I do not regard his abandonment of duty with favor. So far as appears, he has violated a high obligation, without sufficient justification, and nothing but a clear conviction of the limited scope of the treaty constrains me to stand between him and the punishment that he apparently deserves. The courts of the United States are bound, and will, no doubt, always be ready, to enforce the treaty stipulations of this government with a friendly nation; but they are equally bound to adhere to the terms of such stipulations, and to go no further than the contracting powers have themselves seen proper to direct. Obviously such a situation as is now presented was not foreseen 70 years ago. The article in question is dealing with completed vessels, manned by organized crews, that may be visiting the ports of the foreign power, and to that subject its provisions must be confined.

It is accordingly ordered that the prisoner be discharged from custody.